IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES MAURICE GRIMES, TDCJ #619562, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. H-17-2482 |
| LORIE DAVIS, Director, Texas Department of Criminal Justice - Correctional Institutions Division, | § § § § § | |
| Respondent. | § § | |

## MEMORANDUM OPINION AND ORDER

James Maurice Grimes (TDCJ #619562) has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1) to challenge a state court murder conviction that was entered against him in 1995. Respondent Lorie Davis has filed a Motion for Summary Judgment With Brief in Support ("Respondent's MSJ") (Docket Entry No. 18), arguing that the Petition is barred by the governing one-year statute of limitations. In response Grimes has filed Petitioner's Rebuttal of Summary Judgment ("Petitioner's Rebuttal") (Docket Entry No. 20) and Petitioner's Motion to Supplement Rebuttal to Respondents' Summary Judgment ("Petitioner's Supplemental Rebuttal") (Docket Entry No. 21). After considering the pleadings, the state court records, and the applicable law, the court will grant Respondent's MSJ and will dismiss this case for the reasons explained below.

## I.  Background and Procedural History

On January 6, 1994, a grand jury returned an indictment against Grimes, charging him with murder in Harris County Cause No. 9400486, for causing the death of Leah Carol Bandaries.[1] After a jury in the 177th District Court for Harris County, Texas, found Grimes guilty as charged, the trial court sentenced Grimes to life imprisonment on September 5, 1995.[2] The sentence was "cumulated" to run consecutive to a 40-year term that was imposed against Grimes previously when he was convicted in Harris County Cause No. 643491 of aggravated kidnapping in connection with Bandaries's death.[3]

### A.  Direct Appeal

Grimes' direct appeal from his conviction in Cause No. 9400486 was initially dismissed as untimely. See Grimes v. State, No. 14-95-1329-CR (Tex. App. — Houston [14th Dist.] Dec. 14, 1995, no pet.).[4] He was granted leave to file an out-of-time appeal after newly appointed counsel argued successfully that Grimes was

---

[1] See Indictment, Docket Entry No. 17-6, p. 70. For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2] See Judgment on Jury Verdict of Guilty, Docket Entry No. 17-6, pp. 71-72.

[3] See id. at 71. See also Indictment in Cause No. 643491, Docket Entry No. 17-6, p. 31; Judgment on Jury Verdict of Guilty in Cause No. 643491, Docket Entry No. 17-6, p. 40.

[4] See Corrected Opinion, Docket Entry No. 17-5, p. 17.

prevented from filing a timely notice of appeal through no fault of his own.[5]

During his direct appeal Grimes argued that there was insufficient evidence to show that he caused the victim's death by striking her in the neck as alleged in the indictment.[6] He argued further that there was a fatal variance between the theory alleged in the indictment and the proof presented at trial, which showed that she was strangled.[7] The intermediate court of appeals rejected all of Grimes' arguments and affirmed the conviction after summarizing the evidence presented at trial:

> The complainant, Leah Carol Bandaries was a small, 23-year-old woman who was mentally slow. She was somewhat obsessive about her purse; she carried it under her arm and did not want anyone to see what was in it. About two weeks before her murder, [Grimes] told a friend that "we ought to take the silly ass bitch down to the woods and beat her to death because you could have thousands of dollars in that purse." [Grimes]'s brother heard [Grimes] talking with several other men about the "crazy girl" with the purse. They speculated that she must have a lot of money in that purse because of the way she held it so close to her. They said that they would not mind taking the purse from her, and that if they had to they would "beat the s___ out of her." Two days before the complainant was murdered, [Grimes]'s brother again heard [Grimes] talking to another man about trying to get the complainant's purse. [Grimes] said he was

---

[5]See Ex parte Grimes, Docket Entry No. 14-1, p. 1; see also Application for Writ of Habeas Corpus for an Out-Of-Time Appeal, Writ No. 9400486-A, Docket Entry No. 17-5, pp. 6-16.

[6]See Appellant's Brief (part one), Docket Entry No. 14-4, p. 3.

[7]See id. at 3, 7; see also Appellant's Brief (part two), Docket Entry No. 14-5, pp. 3-4.

going to be real nice to her and try to get the purse
then. The other man told [Grimes] that "if that does not
work you know what you have to do."

On the night the complainant was murdered, an
eyewitness saw her with [Grimes] outside a bar. They
were arguing; [Grimes] hugged the complainant in a
"forceful" way. She was crying and trying to get away.
He saw them walk away together.

The complainant's bruised and battered body was
discovered in a wooded area the next morning. When
[Grimes] came home that morning, he had blood on his
pants and shoes. He also had scratches on his face and
hand that were not there the day before.

Grimes v. State, No. 01-96-01303-CR, slip op. at 1-2 (Tex. App. —

Houston [1st Dist.] Oct. 1, 1998) (unpublished).[8] The Texas Court

of Criminal Appeals refused Grimes' petition for discretionary

review on March 17, 1999. See Grimes v. State, PD-0124-99 (Tex.

Crim. App.). Because Grimes did not appeal further by seeking

certiorari review with the United States Supreme Court, his

conviction became final 90 days later on June 15, 1999.[9]

## B.   State Collateral Review

State court records show that Grimes filed four state habeas

corpus applications under Article 11.07 of the Texas Code of

Criminal Procedure and a motion for post-conviction DNA testing

under Chapter 64 of the Texas Code of Criminal Procedure to

challenge his murder conviction in Cause No. 9400486. To the

extent that these proceedings are relevant to the chronology of

---

[8]Opinion, Docket Entry No. 14-3, pp. 1-2.

[9]See Sup. Ct. R. 13.1.

this case and the running of the statute of limitations on federal habeas review, these state court proceedings are summarized briefly below.[10]

### 1. Grimes' First State Habeas Application

Grimes filed his first state habeas corpus application on February 16, 1996, in an effort to file an out-of-time appeal from his conviction in Cause No. 9400486.[11] That application was granted, and Grimes was given leave to file an out-of-time appeal on September 11, 1996.[12]

### 2. Grimes' Second State Habeas Application

After Grimes' direct appeal concluded, he filed a second state habeas application to challenge his conviction in Cause No. 9400486

---

[10]Grimes also filed a separate state habeas corpus proceeding to challenge his aggravated kidnapping conviction in Cause No. 643491 on March 21, 2016, and two separate applications for a writ of mandamus on October 10, 2016, and October 14, 2016. See State Habeas Application No. 643491-A, Docket Entry No. 17-19, pp. 6-30; Plaintiff's Original Application for Writ of Mandamus, Docket Entry No. 17-11; and Plaintiff's Original Application for Writ of Mandamus, Docket Entry No. 17-16. The Texas Court of Criminal Appeals denied Grimes' state habeas corpus application in Cause No. 643491-A without a written order on February 1, 2017. See Action Taken on Writ No. 31,243-06, Docket Entry No. 17-18. The Texas Court of Criminal Appeals denied both mandamus applications without a written order on February 1, 2017, and March 1, 2017. See Ex parte Grimes, Writ No. 31,243-04, Docket Entry No. 17-8, and Ex parte Grimes, Writ No. 31,243-05, Docket Entry No. 17-13. Because these proceedings are not pertinent to the resolution of Respondent's MSJ, they are not addressed further.

[11]See Application for Writ of Habeas Corpus for an Out-Of-Time Appeal, Writ No. 9400486-A, Docket Entry No. 17-5, pp. 6-16.

[12]See Ex parte Grimes, Docket Entry No. 14-1, p. 1.

on June 13, 2000.[13]  Grimes argued that his murder conviction violated the prohibition against double jeopardy because he was convicted previously in a separate case, charging him with aggravated kidnapping in Cause No. 643491.[14]  The state habeas corpus court concluded that the claim lacked merit and recommended that relief be denied.[15]  The Texas Court of Criminal Appeals agreed and denied relief without a written order on January 31, 2001.[16]

### 3.  Grimes' Third State Habeas Application

On October 4, 2001, Grimes filed another application for a state writ of habeas corpus, challenging the trial court's decision to cumulate the sentence he received in Cause No. 9400486 with the sentence he received for aggravated kidnapping in Cause No. 643491.[17]  The trial court found that the claim could have been raised in his prior application and, alternatively, that the claim lacked merit.[18]  Based on those findings the Texas Court of Criminal

---

[13]Application for Writ of Habeas Corpus, Art. 11.07, V.A.C.C.P. ("State Habeas Application No. 9400486-B"), Docket Entry No. 17-6, pp. 1-30.

[14]Id. at 9.

[15]Respondent's Proposed Findings of Fact and Order ("Findings and Order"), Docket Entry No. 17-6, p. 61.

[16]Action Taken on Writ No. 31,243-02, Docket Entry No. 17-6, p. 1.

[17]Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 ("State Habeas Application No. 9400486-C"), Docket Entry No. 17-7, pp. 6, 9.

[18]Findings and Order, Docket Entry No. 17-7, p. 38.

Appeals dismissed the application on January 30, 2002, as subsequent or successive and barred by the Texas abuse-of-the-writ statute, Article 11.07, § 4(a) of the Texas Code of Criminal Procedure.[19]

## 4. Grimes' Post-Conviction DNA Proceedings

On April 17, 2009, Grimes filed a pro se motion pursuant to Chapter 64 of the Texas Code of Criminal Procedure for post-conviction DNA testing of biological evidence collected in his case.[20] The trial court appointed counsel to represent Grimes and granted the motion for post-conviction DNA testing on June 3, 2010.[21] Testing done by the Texas Department of Public Safety determined that DNA extracted from sperm cells found on an oral swab of the victim were consistent with Grimes' DNA profile.[22] On July 1, 2014, the trial court found that the test results of biological evidence recovered during the murder investigation were "not favorable" to Grimes.[23] In making those findings, the trial

---

[19]Action Taken on Writ No. 31,243-03, Docket Entry No. 17-7, p. 1.

[20]State's Proposed Findings of Fact After DNA Testing ("Findings After DNA Testing"), Docket Entry No. 17-20, p. 89.

[21]State's Proposed Findings and Order Pursuant to Tex. Code Crim. Proc. 64.03, Docket Entry No. 17-20, pp. 69-71.

[22]Findings After DNA Testing, Docket Entry No. 17-20, p. 91 ¶ 19 (referencing State's Exhibit E, Texas Department of Public Safety, Serology\DNA Report, Docket Entry No. 17-20, p. 101).

[23]Findings After DNA Testing, Docket Entry No. 17-20, p. 91 ¶ 23 (emphasis in original).

court observed that fingernail scrapings were collected from the victim and turned over to the prosecutor, Mike Anderson, by one of the case agents.[24]   In response to the request for DNA testing of these items, however, Anderson reported that he was not in possession of the nail scrapings and that he "did not have any knowledge of their whereabouts or existence."[25]

### 5.   Grimes' Fourth State Habeas Application

On November 2, 2015, Grimes filed another state habeas corpus application.[26]   Grimes raised the following arguments:

1.   He was entitled to relief based on "Newly Discovered Evidence" disclosed during his post-conviction DNA proceeding.[27]

2.   He was entitled to additional DNA testing of "ALL" existing untested biological evidence in custody of the Harris County Crime Lab, namely, "Hair and Blood found at the scene of the crime[.]"[28]

3.   He is "actually innocent" of the offense based on "newly discovered evidence" uncovered during post-conviction DNA testing, showing that the prosecutor violated "the Brady Rule" by hiding or destroying

---

[24]Id. at 89-90 ¶¶ 10-11.

[25]Id. at 90 ¶ 12 (citing State's Exhibit C, Affidavit of Mike Anderson dated Feb. 18, 2013).

[26]Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 ("State Habeas Corpus Application No. 9400486-D"), Docket Entry No. 17-24, pp. 4-24.

[27]Id. at 9 (Ground One).

[28]Id. at 11 (Ground Two).

"biological evidence of blood and fingernail scrapings from the victim[.]"[29]

4. The trial court denied him the right to confront and cross-examine a witness (Daniel Velasquez) at trial.[30]

5. The evidence was legally and factually insufficient to support the conviction.[31]

6. The prosecutor engaged in misconduct by suppressing biological evidence (fingernail scrapings) that was never returned, coaching a 12-year-old witness (Michael Edwards) to give perjured testimony, and making false statements during his closing argument to the jury.[32]

7. He was denied effective assistance of counsel before and during trial.[33]

The trial court found that the application was subject to dismissal as a subsequent writ barred by Article 11.07, § 4(a).[34] The Texas Court of Criminal Appeals agreed and dismissed the application under Article 11.07, § 4(a) on March 1, 2017.[35]

## C. Grimes' Federal Petition

On August 12, 2017, Grimes executed the pending Petition seeking federal habeas corpus relief from his 1995 murder

---

[29]Id. at 13 (Ground Three).

[30]Id. at 15 (Ground Four).

[31]Id. at 17 (Ground Five).

[32]Id. at 18-19 (Ground Six).

[33]Id. at 20 (Ground Seven).

[34]The State's Proposed Findings of Fact, Conclusions of Law, and Order on Application No. 9400486-D, Docket Entry No. 17-23, p. 18.

[35]Action Taken on Writ No. 31,234-07, Docket Entry No. 17-22, p. 1.

conviction under 28 U.S.C. § 2254.[36]  Grimes contends that he is

entitled to relief for the following reasons:

1.    The Texas Court of Criminal Appeals erred by refusing to consider the merits of his 2015 state writ application.

2.    He is "actually innocent" of the offense based on "newly discovered evidence" of prosecutorial misconduct uncovered during his post-conviction DNA proceeding.

3.    He is entitled to additional DNA testing of "all" biological evidence still in the state's possession.

4.    He was denied the right to confront and cross-examine a witness (Daniel Velasquez) at trial.

5a.   The prosecutor committed misconduct by suppressing biological evidence (fingernail scrapings from the victim) that was signed out to him, but never returned to the Houston Police Department Evidence Room.

5b.   The prosecutor committed misconduct by coaching a 12-year-old witness (Michael Edwards) to give perjured testimony and making false arguments to the jury at trial.

6.    The evidence is legally and factually insufficient to support the conviction.

7.    He was denied effective assistance of counsel throughout his entire case.[37]

The respondent argues that the Petition must be dismissed because

all of the claims are barred by the governing one-year statute of

limitations on federal habeas corpus review.

---

[36]Petition, Docket Entry No. 1, p. 12.

[37]Id. at 6-9; Memorandum of Law in Support of Petitioner's Writ of Habeas Corpus, 28 U.S.C. § 2254 ("Memorandum of Law"), Docket Entry No. 2, pp. 1-51.

## II. Discussion

### A. The One-Year Statute of Limitations

According to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Because the pending Petition was filed well after April 24, 1996, the one-year limitations period clearly applies.  See Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citation omitted).

-11-

To the extent that Grimes challenges a state court judgment of conviction, the limitations period began to run pursuant to § 2244(d)(1)(A) on June 15, 1999, when his conviction became final upon the expiration of his time to pursue direct review. See Gonzalez v. Thaler, 132 S. Ct. 641, 644, 647 (2012) (noting that where Supreme Court review is not sought a conviction becomes final "when the time for seeking further direct review in the state court expires"). That date triggered the statute of limitations, which expired one year later on June 15, 2000. Because Grimes did not execute his pending Petition until August 2, 2017, review is barred by the statute of limitations unless a statutory or equitable exception applies.

## B.   The Availability of Tolling Under 28 U.S.C. § 2244(d)(2)

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed application for [s]tate post-conviction or other collateral review" is pending shall not count toward the limitations period on federal habeas review. The chronology of Grimes' state post-conviction proceedings shows that only his second state habeas corpus application, which was filed two days before the statute of limitations expired, tolls the limitations period pursuant to § 2244(d)(2). That application, which was filed on June 13, 2000, and denied by the Texas Court of Criminal Appeals on January 31, 2001, tolled the statute of limitations for federal review for 234 days, from June 15, 2000, to February 2, 2001. None

of Grimes' subsequent state habeas applications or motions for collateral review extend the statute of limitations under § 2244(d)(2) because they were filed after the extended limitations period expired in February of 2001. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).[38]

The pending Petition, executed on August 2, 2017, is late by more than 16 years and must therefore be dismissed unless Grimes establishes that some other statutory or equitable basis exists to excuse his failure to comply with the statute of limitations that limits federal habeas review.

## C. There is No Other Basis for Statutory or Equitable Tolling

The court has considered Petitioner's Rebuttal and Petitioner's Supplemental Rebuttal,[39] and notes that he does not assert that he was subject to state action that impeded him from filing his Petition in a timely manner. See 28 U.S.C. § 2244(d)(1)(B). Likewise, none of his claims are based on a constitutional right that has been newly recognized by the Supreme Court. See 28 U.S.C. § 2244(d)(1)(C). Moreover, for reasons addressed separately below, none of his claims raise a constitutional issue that is based on a "new factual predicate" that could not have been discovered previously if the petitioner

---

[38]Grimes' first state habeas application, which was filed in 1996 and resulted in an out-of-time appeal, does not toll the limitations period because it was filed before the conviction became final in 1999.

[39]Docket Entry Nos. 20, 21.

had acted with due diligence. See 28 U.S.C. § 2244(d)(1)(D); Pace v. DiGuglielmo, 125 S. Ct. 1807, 1813 n.6 (2005) (observing that the availability of review under § 2244(d)(1)(D) for claims based on a "new factual predicate" requires "claim-by-claim consideration"); Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (concluding that the statute of limitations found in 28 U.S.C. § 2244(d)(1) "must be applied on a claim-by-claim basis"). Grimes does not otherwise show that federal review is available for any of his claims.

## 1. Claims Concerning State Court Proceedings

Two of Grimes' claims complain of rulings that allegedly occurred on collateral review in state court. In Claim 1 Grimes complains of the decision issued by the Texas Court of Criminal Appeals on March 1, 2017, to dismiss his fourth state habeas application as barred by the prohibition on successive or subsequent writ applications.[40] In Claim 3 Grimes appears to fault a decision made by the trial court on May 24, 2016, which effectively denied a request that he had made on January 25, 2016, for additional DNA testing under Chapter 64 of the Texas Code of Criminal Procedure and for the appointment of counsel.[41]

---

[40]See Action Taken on Writ No. 31,243-07, Docket Entry No. 17-22, p. 1 (citing Tex. Code Crim. Proc. art. 11.07, § 4(a)-(c)).

[41]See Motion for Forensic DNA Testing Pursuant to Article 64.01, Texas Code of Criminal Procedure, Docket Entry No. 17-20, pp. 103-11; Request for Appointment of Counsel Pursuant to Article
(continued...)

Although Grimes' federal Petition may be timely under 28 U.S.C. § 2244(d)(1)(D) as to the factual predicates for Claims 1 and 3, this does not benefit Grimes because the substance of his allegations do not articulate viable claims for relief on federal habeas review. The Fifth Circuit has repeatedly held that "infirmities" or errors that occur during state collateral review proceedings "do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001) (quoting Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999)) (citations omitted). Accordingly, Claim 1 must be dismissed for failure to state a claim.

Likewise, a request for DNA testing is not cognizable on federal habeas review, which is limited to determining whether a petitioner is "'in custody in violation of the Constitution or laws or treaties of the United States.'" Malone v. Thaler, Civil No. 3:11-2304-M(BK), 2012 WL 760319, *2 (N.D. Tex. 2012) (quoting 28 U.S.C. § 2254(a)). Instead, claims for DNA testing must be made in a civil rights action under 42 U.S.C. § 1983. See Skinner v. Switzer, 131 S. Ct. 1289, 1297-98 (2011) (concluding that a convicted state prisoner may press a procedural due process claim concerning access to DNA testing under 42 U.S.C. § 1983); but see District Attorney's Office for Third Judicial Dist. v. Osborne, 129

---

[41](...continued)
64, Code of Criminal Procedure, Docket Entry No. 17-20, p. 112; Order [Denying Appointment of Attorney], Docket Entry No. 17-20, p. 113.

S. Ct. 2308, 2322-23 (2009) (declining to recognize a free-standing substantive due process right to access DNA evidence for testing). Accordingly, even assuming that Claim 3 is timely filed for purposes of § 2244(d)(1)(D), Grimes' request for additional DNA testing must be dismissed because it fails to state a claim upon which relief may be granted under the federal habeas corpus statutes.

### 2. Claims Based on Facts Available at Trial

The following claims are based on facts that were available at or near the time of trial:

(a) Grimes was unable to confront or cross-examine a witness (Claim 4);

(b) the prosecutor engaged in misconduct by coaching a witness to commit perjury and by making false arguments to the jury (Claim 5b);

(c) the evidence was legally and factually insufficient (Claim 6); and

(d) he was denied effective assistance of counsel before and during trial (Claim 7).[42]

Grimes has not shown that the factual predicates for these claims were unavailable before his conviction became final on June 15, 1999. Because Grimes does not offer any reason for his failure to pursue federal review of these claims before the statute of limitations expired in 2001, he is not entitled to tolling under § 2244(d)(1)(D).

_____

[42]See Petition, Docket Entry No. 1, pp. 7, 8, 9; Memorandum of Law, Docket Entry No. 2, pp. 23-28.

Likewise, Grimes has not demonstrated that he pursued federal review of these claims with due diligence or that some extraordinary circumstance stood in his way. See Holland v. Florida, 130 S. Ct. 2549, 2562 (2010). Therefore, equitable tolling is not available to preserve federal review, and these claims (Claims 4, 5b, 6, and 7) are barred by the statute of limitations.

### 3. Claims of Actual Innocence

In Claim 2 Grimes asserts that he is entitled to relief because he is "actually innocent" based on biological evidence suppressed by the prosecutor.[43] Grimes elaborates in Claim 5a that he was prevented from proving his actual innocence previously because the prosecutor suppressed "exculpatory" biological evidence in the form of fingernail scrapings, which — if subjected to DNA testing — may have been favorable to his defense.[44]

A free-standing allegation of actual innocence is not an "independent constitutional claim" that is actionable on federal habeas corpus review. See Herrerra v. Collins, 113 S. Ct. 853, 869 (1993); see also Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003) (observing that the Fifth Circuit has repeatedly held that claims of actual innocence are "not cognizable" on federal habeas review) (citations omitted)). If proven, however, actual innocence

---

[43]Petition, Docket Entry No. 1, p. 6.

[44]Memorandum of Law, Docket Entry No. 2, pp. 9-10, 23, 25.

may excuse a failure to comply with the one-year statute of limitations on federal habeas corpus review. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To be credible a petitioner must support a claim of actual innocence with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup v. Delo, 115 S. Ct. 851, 865 (1995). To prevail on such a claim a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 867.

Grimes points to post-conviction DNA testing in his case and argues that newly discovered evidence disclosed during that proceeding somehow proves that he is actually innocent and that the prosecutor suppressed evidence in violation of Brady v. Maryland, 83 S. Ct. 1194 (1963). Grimes does not allege facts showing that there is exculpatory evidence or that any material evidence was suppressed by the prosecutor for purposes of making a Brady claim.[45] The trial court found that the newly tested DNA evidence was "not

---

[45]To establish a Brady violation a defendant must prove that: (1) evidence was withheld or suppressed by the prosecutor, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; and (3) the evidence was material such that prejudice ensued. See Strickler v. Greene, 119 S. Ct. 1936, 1948 (1999). Evidence is material under Brady "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 105 S. Ct. 3375, 3383 (1985).

favorable" to Grimes.[46] A state court's fact findings are presumed correct on federal habeas review unless the petitioner rebuts those findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Grimes does not present any evidence to contradict the state court's findings. Because he has not shown that he is actually innocent, he is not entitled to tolling under McQuiggin. Accordingly, these claims (Claims 2 and 5a) are barred by the statute of limitations.

Because Grimes fails to establish that an exception to the AEDPA statute of limitations applies with respect to any of his claims, the Respondent's MSJ will be granted and the Petition will be dismissed as untimely under 28 U.S.C. § 2244(d)(1).

### III.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

---

[46]Findings After DNA Testing, Docket Entry No. 17-20, p. 91 ¶ 23 (emphasis in original).

wrong." <u>Tennard v. Dretke</u>, 124 S. Ct. 2562, 2565 (2004) (quoting <u>Slack v. McDaniel</u>, 120 S. Ct. 1595, 1604 (2000)). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, <u>sua</u> <u>sponte</u>, without requiring further briefing or argument. <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, this court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner states a valid claim for relief. Therefore, a certificate of appealability will not issue.

## IV. <u>Conclusion and Order</u>

Accordingly, the court **ORDERS** as follows:

1.  Respondent's Motion for Summary Judgment (Docket Entry No. 18) is **GRANTED**.

2.  Petitioner's Motion to Supplement Rebuttal to Respondent's Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED**.

3.  The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by James Maurice Grimes (Docket Entry No. 1) is **DISMISSED with prejudice**.

4.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 8th day of March, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE